[Docket No. 18]

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

|  |  |
|---|---|
| SOUTH MILLVILLE PROPERTIES LLC<br><br>        Plaintiff,<br><br>   v.<br><br>WESTCHESTER SURPLUS LINES INSURANCE COMPANY<br><br>        Defendant. | Civil No. 23-1193 (RMB-AMD)<br><br>**OPINION** |

**APPEARANCES**

Wilkofsky, Friedman, Karel & Cummins
Roman Rabinovich, Esq.
300 Carnegie Center, Suite 150
Princeton, New Jersey 08540

    *On behalf of Plaintiff South Millville Properties LLC*

Cozen O'Connor
Paul F. Ferland, Esq.
3 World Trade Center
175 Greenwich Street, 55th Floor
New York, NY 10007

    *On behalf of Defendant Westchester Surplus Lines Insurance Company*

**RENÉE MARIE BUMB, Chief United States District Judge**

    This matter comes before the Court upon Defendant Westchester Surplus

Lines Insurance Company's ("Westchester" or "Defendant") Motion to Dismiss

Plaintiff South Millville Properties LLC's ("Plaintiff") First Amended Complaint ("FAC"). [Docket No. 18.]

Was it theft or was it a fire? If a fire caused damage to Plaintiff's premises, Defendant, Plaintiff's insurer, is required to cover Plaintiff's losses under the plain terms of the parties' insurance contract. If the theft of copper electrical components caused damage to Plaintiff's premises, Defendant is not required to provide coverage. What about if a theft of copper electrical components caused a fire which damaged Plaintiff's premises? That is undisputedly what happened in this case. The Court—reading the plain language of the insurance policy alongside well-established state law rules of insurance contract interpretation—finds that Plaintiff can state a claim for relief in such a scenario. For the reasons set forth below, Defendant's Motion to Dismiss is **DENIED**.

## I.     FACTUAL BACKGROUND

### A.     The Insurance Policy

On September 15, 2021, Defendant issued an insurance policy (the "Policy") covering a building owned by Plaintiff. [FAC ¶¶ 6–8; *see also* Certification of Paul F. Ferland in Support of Defendant's Motion to Dismiss ("Ferland Cert."), Ex. A.] Specifically, the Policy covers "physical loss of or damage to [Plaintiff's building] caused by or resulting from any Covered Cause of Loss." [Ferland Cert., Ex. A at 20.] A "Covered Cause of Loss" is any "direct physical loss unless the loss is

2

excluded or limited in this policy." [FAC ¶ 12; Ferland Cert., Ex. A at 20.] Physical loss or damage from fire is not excluded under the Policy. [*See* FAC ¶ 15.]

Two exclusions are relevant here. First, there is the Theft Exclusion. [Ferland Cert., Ex. A at 48.] The Theft Exclusion states that Westchester "will not pay for loss or damage caused by or resulting from theft." [*Id.*] In such cases, Westchester will only pay for premises loss or damage occurring due to (i) "looting at the time and place of a riot or civil commotion"; or (ii) "the breaking in or exiting of burglars." [*Id.*] Additionally, the Theft Exclusion provides that if a theft results in a Covered Cause of Loss, Westchester will pay for the loss or damage caused by that Covered Cause of Loss. [*Id.*]

Second, there is the Copper Loss or Damage Exclusion (the "Copper Loss Exclusion"). The Copper Loss Exclusion excludes coverage for "Loss or damage to copper, including but not limited to wiring, piping, air-conditioner coils or roofs, and loss or damage to the described premises caused by or resulting from the theft, attempted theft or vandalism of copper." [Ferland Cert., Ex. A at 52.] In such cases—just like the Theft Exclusion—Westchester will only pay for loss or damage occurring due to (i) "looting at the time and place of a riot or civil commotion"; or (ii) "the breaking in or exiting of burglars." [*Id.*] Unlike the Theft Exclusion, however, the Copper Loss Exclusion does not provide that if the theft of copper

3

results in a Covered Cause of Loss, Westchester will pay for the loss or damage caused by that Covered Cause of Loss.

### B.    The Theft and the Fire

On October 12, 2021, a fire broke out at Plaintiff's building. According to a Fire Origin & Cause Report, the fire started when "someone attempted to steal the copper conductors between the meter base and panels." [Ferland Cert., Ex. B at 2.] Evidence of burglary and theft was obvious—the vandals broke into the building's main electrical panels using large cutters to remove the breakers and copper conductors contained underneath. [*Id.* at 2, 4.] According to the fire marshal, when the vandals cut and pulled out the copper conductors, it created an "arc flash" energizing the building's galvanized gas pipe and as a result, starting a fire. [*Id.* at 2, 4; *see also* FAC ¶ 25.] In other words, the vandals' attempt to steal the copper conductors from the main electrical service caused the fire which caused damage to the building. [Ferland Cert., Ex. C at 1.]

### C.    Westchester Denies Coverage Under the Copper Loss Exclusion

One day after the fire, Plaintiff filed a claim (the "Claim") with Westchester under the Policy for damage caused by the fire. [FAC ¶ 17.] On March 9, 2022, Westchester issued a Partial Declination of Coverage of the Claim. [FAC ¶ 27.] Citing both the Theft and Copper Loss Exclusions, Westchester informed Plaintiff

4

that it would not cover the resulting fire damage started by the theft of copper electrical components.[1] [Ferland Cert., Ex. C at 4.]

Plaintiff submitted a Request for Reconsideration to Westchester regarding the Partial Declination. [FAC ¶ 36; Ferland Cert., Ex. D.] South Millville argued that the Claim was improperly denied and that the Theft and Copper Loss Exclusions were inapplicable because the fire, not the theft was the cause of the loss. [FAC ¶ 36; [Ferland Cert., Ex. D at 3.] Westchester reaffirmed its Partial Declination on January 5, 2023. [FAC ¶ 39; Ferland Cert., Ex. E.]

### D.   The Instant Litigation

Plaintiff's First Amended Complaint is premised on the same grounds set forth in its Request for Reconsideration. That is, that Westchester's declination of the Claim under the Copper Loss Exclusion was a breach of the Policy. [FAC ¶¶ 36–37, 56.]  Plaintiff contends in Count I that Westchester breached the Policy by declining coverage for Plaintiff's Claim. [*See* FAC ¶¶ 41–58.] Plaintiff alleges that it sustained damages in the amount of at least $252,592.82 and anticipates incurring additional losses including foreclosure/distressed property sale, and loss of business opportunities. [*See* FAC ¶ 55.] Plaintiff further alleges in Count I that Westchester breached the covenant of good faith and fair dealing by unreasonably failing to settle the Claim. [*See* FAC ¶ 56.] In Count II, Plaintiff seeks a declaratory judgment that (i)

---

[1] As required under the Policy, Westchester did cover damage to the building caused by the physical breaking in/exiting of the vandals, but because that amount ($1,085.27) was below the Policy's deductible, it applied a coinsurance penalty. [Ferland Cert., Ex. B at 5.]

the Copper Loss Exclusion of the Policy does not apply to limit or exclude coverage with respect to the Loss and/or Claim; (ii) the Theft Loss Exclusion of the Policy does not apply to limit or exclude coverage with respect to the Loss and/or Claim; and (iii) no exclusions or limitations in the Policy apply to exclude or limit coverage for the Loss and/or Claim. [*See* FAC ¶¶ 65–67.]

## II.   PROCEDURAL BACKGROUND

Plaintiff sued Westchester in the Superior Court of Cumberland County on January 26, 2023. [Docket No. 1.] Westchester removed to this Court based on the diversity of the parties. [*See id.*][2] Defendants moved to dismiss on March 21, 2023, and the parties completed their briefing on April 10, 2023. [Docket Nos. 9–12.] Plaintiff shortly thereafter amended its complaint [Docket No. 14] and Defendant re-moved to dismiss, [Docket No. 18.] The parties completed the re-briefing on May 30, 2023, and the motion is now ripe for adjudication.

## III.   LEGAL STANDARD

When considering a motion to dismiss for failure to state a claim upon which relief can be granted, pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court must "accept as true all allegations in the complaint and all reasonable

---

[2] On September 8, 2023, the Court issued an Order to Show Case requiring Defendant to amend its notice of removal because it had not sufficiently alleged the citizenship of Plaintiff, an LLC, according to the citizenship of each of Plaintiff's members as is required to establish federal subject matter jurisdiction based on diversity. [*See* Docket No. 22.] Defendant amended, [Docket No. 23.] and the Court, satisfied that it had subject-matter jurisdiction over the dispute, discharged the Order to Show Cause. [*See* Docket No. 25.]

inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff." *Evancho v. Fisher*, 423 F.3d 347, 351 (3d Cir. 2005). It is well-settled that a pleading is sufficient if it contains "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (*first citing Conley v. Gibson*, 355 U.S. 41, 47 (1957); *then citing Sanjuan v. Am. Bd. of Psychiatry & Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994); *and then citing Papasan v. Allain*, 478 U.S. 265, 286 (1986)) (alterations in original). Further, "to determine the sufficiency of a complaint," the Court must follow a three-step process:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Third, "whe[n] there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

*Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011) (*quoting Ashcroft v. Iqbal*, 556 U.S. 662, 664, 675, 679 (2009) (alterations in original)).

A district court, in weighing a motion to dismiss, asks "not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claim." *Twombly*, 550 U.S. at 563 n.8 (quoting *Scheuer v. Rhodes*, 416 U.S.

232, 236 (1974)); *see also Iqbal*, 556 U.S. at 684 ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions' . . . ."); *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) ("*Iqbal* . . . provides the final nail in the coffin for the 'no set of facts' standard that applied to federal complaints before *Twombly*."). Thus, "[a] motion to dismiss should be granted if the plaintiff is unable to plead 'enough facts to state a claim to relief that is plausible on its face.'" *Malleus*, 641 F.3d at 563 (quoting *Twombly*, 550 U.S. at 570).

## IV.   ANALYSIS

Whether Plaintiff may recover under the Policy is a question of contract interpretation that the Court may properly consider on a motion to dismiss in order for the Court to determine whether Plaintiff has adequately stated claims upon which relief can be granted. *See Eye Care Ctr. of New Jersey, PA v. Twin City Fire Ins. Co.*, 522 F. Supp. 3d 72, 77 (D.N.J. 2021), *aff'd sub nom. Wilson v. USI Ins. Serv. LLC*, 57 F.4th 131 (3d Cir. 2023). The Court will apply the plain language of the Policy strictly construing exclusions against the insurer in accord with the objectively reasonable expectations of the insured. *Flomerfelt v. Cardiello*, 997 A.2d 991, 997 (2010); *Princeton Ins. Co. v. Chunmuang*, 698 A.2d 9, 11 (1997). Any ambiguities in the Policy will be resolved in favor of the insured, "[h]owever, ambiguities will not be forced into an insurance policy, nor will the words of an insurance policy be artfully construed to include a type of coverage outside the scope and nature of the policy in question."

*N&S Rest. LLC v. Cumberland Mut. Fire Ins. Co.*, 499 F. Supp. 3d 74, 78 (D.N.J. 2020)

(citing *Benjamin Moore & Co. v. Aetna Cas. & Sur. Co.*, 843 A.2d 1094, 1103 (2004)).

## A.   Whether to Treat Defendant's Motion as One for Summary Judgment

As a threshold matter, the Court must decide whether to convert Defendant's

motion to dismiss for failure to state a claim into one for summary judgment. [*See*

Def.'s Br. at 8–9; Pl.'s Reply at 2–3.] On a motion to dismiss for failure to state a

claim, a district court may "generally consider only the allegations contained in the

complaint, exhibits attached to the complaint and matters of public record." *Schmidt

v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) (*citing Pension Benefit Guar. Corp. v. White

Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993)). When "matters outside of

the pleadings" are presented to and not excluded by the court on a 12(b)(6) motion,

the court must instead convert the motion into one for summary judgment under

Federal Rule of Civil Procedure 56 after giving proper notice to the parties. FED. R.

CIV. P. 12(d); *In re Rockefeller Ctr. Prop., Inc. Secs. Litig.*, 184 F.3d 280, 287 (3d

Cir.1999).

"Matters outside of the pleadings" does not include, however, documents

"integral to or explicitly relied upon in the complaint." *In re Rockefeller Ctr. Props.*, 184

F.3d at 287; *Arcand v. Brother Intern. Corp.*, 673 F.Supp.2d 282 (D.N.J. 2009). And "a

court may consider an undisputedly authentic document that a defendant attaches as

an exhibit to a motion to dismiss if the plaintiff's claims are based on the document.

Otherwise, a plaintiff with a legally deficient claim could survive a motion to dismiss

simply by failing to attach a dispositive document on which it relied." *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993). It is only when a court considers *extraneous* evidence submitted by the defense that it must convert the motion into one for summary judgment and afford the plaintiff an opportunity to present its own evidence. *Id.* at 1196–97 ("When a complaint relies on a document, however, the plaintiff obviously is on notice of the contents of the document, and the need for a chance to refute evidence is greatly diminished.").

Here, even though Plaintiff did not attach the Policy, the Fire Cause & Origin Report, the Partial Declination, or the Request for Reconsideration as exhibits to the First Amended Complaint, it unquestionably relies on, references, and quotes from those documents throughout the First Amended Complaint. [*See* FAC ¶¶ 8–16, 22–40.] And indeed, the substance of Plaintiff's claim is that the language of the Policy requires Westchester to cover losses caused by fire damage to the building. [*Id.* ¶¶ 41–58.] The Court therefore finds that it can consider each of these documents (attached to both parties' briefing) without converting Defendant's motion into one for summary judgment or waiting until summary judgment to consider Westchester's document-based defenses. [Pl.'s Br. at 1–2.]

## B. The Copper Loss Exclusion

The Court must first determine whether the Theft Exclusion or the Copper Loss Exclusion applies. Defendant relies on the more specific Copper Loss Exclusion over the more general Theft Exclusion. [Def.'s Br. at 10, 10 n.6.] The Court agrees that the Copper Loss Exclusion is properly considered here. The Copper Loss

Exclusion is more specific than the Theft Exclusion and deals with the exact scenario before the Court—the theft of copper electrical components. New Jersey courts have recognized that when an insurance contract contains two overlapping exclusionary provisions, the more specific provision applies over any general provisions. *Homesite Ins. Co. v. Hindman*, 992 A.2d 804 (N.J. App. Div. 2010); *see also Bauman v. Royal Indem. Co.*, 174 A.2d 585, 590 (N.J. 1961) ("In the interpretation of a contractual instrument, the specific is customarily permitted to control the general and this ordinarily serves as a sensible aid in carrying out its intendment.").

The text of the Copper Loss Exclusion reads as follows:

**CAUSES OF LOSS – SPECIAL FORM, B. Exclusions; 2**. is amended by the addition of the following:

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

...

Loss or damage to copper, including but not limited to wiring, piping, air-conditioner coils or roofs, and loss or damage to the described premises caused by or resulting from the theft, attempted theft or vandalism of copper.

But we will pay for:

1) Loss or damage that occurs due to looting at the time and place of a riot or civil commotion; or
2) Building damage caused by the breaking in or exiting of burglars.

Vandalism means willful and malicious damage to, or destruction of, the described property.

All other terms and conditions of this policy remain unchanged.

[Ferland Cert., Ex. A at 53.]

11

The meaning of this provision appears to be clear. The first clause excludes coverage, as Plaintiff points out, for the actual loss or damage to copper caused by or resulting from theft. [Pl.'s Br. at 10.] But the second clause provides that if "loss or damage *to the described premises*" is "caused by or result[s] from the theft, attempted theft or vandalism of copper," coverage is excluded other than for building damage occurring by looting or from the physical breaking and in or exiting of the burglars in carrying out the theft, attempted theft, or for vandalism. [Ferland Cert., Ex. A at 53 (emphasis added).]

Here, burglars entered Plaintiff's building to steal copper electrical components. That burglary caused an arc flash igniting a gas line which started the fire. [FAC ¶ 25; Ferland Cert., Ex B at 2.] The resulting loss or damage to the described premises from the fire thus was caused by or resulted from the attempted theft or vandalism of copper. Plaintiff denies none of this. [Pl.'s Br. at 12 ("[I]t is undisputed that the copper was stolen by the burglars, but the damage caused to the Subject Premises was due to fire – not the theft of the copper wire."); Ferland Cert., Ex. D (letter from Plaintiff's counsel to Defendant stating that the facts are "undisputed").] Thus, on its own, the Copper Loss Exclusion seems to prevent Plaintiff from stating a claim upon which relief can be granted.

## C.    The Appleman Rule

Despite the language of the Copper Loss Exception, Plaintiff maintains that it can still state a claim because the Policy must be read against a well-established rule

of insurance contract interpretation under New Jersey law: the Appleman Rule. [Pl.'s Br. at 10–11.]

The Appleman Rule provides that "if an exclusion bars coverage for losses caused by a particular peril, the exclusion applies only if the excluded peril was the 'efficient proximate cause' of the loss." *N.J. Transit Corp. v. Certain Underwriters at Lloyd's London*, 221 A.3d 1180, 1192 (N.J. App. Div. 2019), *aff'd*, 243 A.3d 1248 (2021) (quoting 5 John Alan Appleman, *Insurance Law & Practice* § 3083 at 309–11 (1970); *Flomerfelt*, 202 N.J. at 447. In other words, under the Appleman Rule, the insured may recover if a covered cause of loss "was the last step in [a] chain of causation set in motion by an uninsured peril, or where the [covered cause of loss] itself set into operation a chain of causation in which the last step may have been an [excluded] risk." *Auto Lenders Acceptance Corp. v. Gentilini Ford, Inc.*, 854 A.2d 378, 385 (N.J. 2004) (quoting, 5 Appleman, *supra*, § 3083 at 309–11); *Downs Ford, Inc. v. Zurich Am. Ins. Co.*, 2021 WL 1138141, at *4 (D.N.J. Mar. 25, 2021). "Ultimately, however, the pertinent question [under Appleman] is not where in the sequence the alleged cause of loss occurred, but what was the predominant cause that produced the loss." *Garmany of Red Bank, Inc. v. Harleysville Ins. Co.*, 2021 WL 1040490, at *5 (D.N.J. Mar. 18, 2021) (citing *Franklin Packaging Co. v. Cal. Union Ins. Co.*, 408 A.2d 448, 449 (N.J. App. Div. 1979).

The Appleman analysis in this case would go like this: The fire was the last step in a two-step sequence, beginning with the theft of copper (an excluded risk), that proximately caused Plaintiff's loss. And so, because the fire—a Covered Cause

13

of Loss—ended the sequential chain that caused Plaintiff's loss, Plaintiff can state a claim for relief.

### 1. *The Policy Does Not Prevent Application of the Appleman Rule*

Appleman is a default rule. Exclusionary language designed to avoid its effect is enforceable. *Eye Care Ctr. of New Jersey, PA*, 522 F. Supp. 3d at 77; *Lam Inv. Research, LLC v. Pub. Serv. Mut. Ins. Co.*, 2016 WL 6634931, at *5 (D.N.J. Apr. 1, 2016) (explaining that an anti-concurrent or anti-sequential clause "preempts such background interpretation principles as the 'efficient proximate cause' doctrine, which by their terms apply only absent contrary policy language"). The Appleman Rule may be contracted around through "an anti-concurrent or anti-sequential clause" which "exclude[s] coverage when a prescribed excluded peril, alongside a covered peril, either simultaneously or sequentially, causes damage to the insured." *Beach Glo Tanning Studio Inc. v. Scottsdale Ins. Co.*, 2021 WL 2206077, at *5 (D.N.J. May 28, 2021) (quoting *N.J. Transit Corp.*, 221 A.3d at 1192).

Here, the Copper Loss Exclusion contains no anti-concurrent or anti-sequential language. The Copper Loss Exclusion modifies "CAUSES OF LOSS – SPECIAL FORM, B. Exclusions; 2." [Ferland Cert., Ex. A at 53.] Special Form (B)(2) contains no anti-concurrent preamble language, stating only that Westchester "will not pay for loss or damage caused by or resulting from [the Copper Loss Exclusion]." [Ferland Cert., Ex. A at 40.] But crucially, Special Form (B)(1) unquestionably *does* contain anti-concurrent preamble language stating that Westchester "will not pay for loss or damage caused directly or *indirectly* by any of

14

the following. Such loss or damage is *excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.*" [Ferland Cert., Ex. A at 38 (emphases added)]. If Westchester wanted the Copper Loss Exclusion to prevent application of the Appleman Rule, it could have modified the Copper Loss Exclusion vis-à-vis Special Form (B)(1) rather than Special Form (B)(2). *See Beach Glo Tanning Studio Inc.*, 2021 WL 2206077, at *6 ("Here, the Court notes the preamble of several other exclusions in the Policy contains the anti-concurrent/sequential cause language. But the [relevant] [e]xclusion is without such anti-concurrent/sequential language."). It did not. Accordingly, the Appleman Rule applies.[3]

## 2.   *Plaintiff Can State a Claim for Relief Under the Appleman Rule*

The Court agrees with Plaintiff that it can state a claim for recovery under the Appleman Rule. The theft of copper electrical components was the but for cause of the fire and the fire was the proximate cause of the loss. And because fire is a Covered Cause of Loss and ended the causal sequence, the Copper Loss Exclusion cannot prevent coverage under Appleman. *Auto Lenders Acceptance Corp.*, 854 A.2d at

---

[3] Nor is there any other language limiting Appleman in the Copper Loss Exclusion itself. The words "caused by" or "resulting from" are not broad enough to constitute an anti-concurrent/sequential clause. *See Beach Glo Tanning Studio*, 2021 WL 2206077, at *5. Westchester could have modified "caused by" by writing "however caused," which appears elsewhere in the Policy, and which would have likely avoided application of the Appleman Rule. [*See, e.g.*, Ferland Cert., Ex. A at 114 (Policy does not apply to wildfire, "however caused"); *Grossberg v. Chubb Ins. Co. of New Jersey*, 2012 WL 3553002, at *6 (N.J. Super. Ct. App. Div. Aug. 20, 2012) ("The phrase 'however caused' avoids application of the efficient proximate cause doctrine."). But it did not.

386 (explaining that New Jersey courts apply the Appleman Rule "where the loss ultimately sustained would have been covered by the policy except for an exclusionary clause"); *Franklin Packaging*, 408 A.2d at 449–50 (N.J. App. Div. 1979) (holding that where vandals broke into insured's warehouse and caused flood resulting in damage to inventory, insured could recover under Appleman because the vandalism (a covered cause of loss) caused the water damage (an excluded risk)); *Stone v. Royal Ins. Co.*, 511 A.2d 717, 720 (N.J. App. Div. 1986) (where sump pump hose broke and flooded insured's basement, court held broken household appliance, a covered cause of loss, was the proximate cause even though losses caused by subsurface water were excluded under the policy).

Defendant's arguments to the contrary are unconvincing. Defendant argues that the Appleman Rule does not apply "because the Copper Loss and Damage Exclusion contains language that alerted Plaintiff that any resulting losses are not covered." [Pl.'s Reply at 8.][4] But the way Defendant would alert Plaintiff that Appleman does not apply is through anti-concurrent/sequential language of some kind. As the Court has noted, the words "caused by" or "resulting from" are not broad enough to constitute an anti-concurrent/sequential clause such that Plaintiff should have known that theft of copper electrical components resulting in a fire would not be covered under the Policy. *See Beach Glo Tanning Studio*, 2021 WL

---

[4] And contrary to Defendant's representations, the Policy does not "provide[] that other causes may contribute to the loss." [Pl.'s Reply at 8.] That is Defendant's own gloss on the Copper Loss Exclusion.

2206077 at *5; *supra* at 15 n.3. The Court will not disrupt the plain language of the contract.

## V.    CONCLUSION

For the foregoing reasons, Defendant's Motion is **DENIED**. Plaintiff can state a claim for breach of contract and for a declaratory judgment given the applicability of the Appleman Rule. An accompanying Order shall issue.


October 16, 2023                                s/ Renée Marie Bumb
Date                                            RENÉE MARIE BUMB
                                                Chief United States District Judge